IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| TRANSPORTATION INSURANCE COMPANY and CONTINENTAL CASUALTY COMPANY, | )<br>)<br>) |
| Plaintiffs | ) |
| v. | ) |
| CADDELL CONSTRUCTION CO. (DE), LLC | ) Civil Action No.<br>) |
| Serve: CT Corporation System<br>120 S. Central Avenue<br>Clayton, MO  63105 | )<br>)<br>) |
| and | ) |
| DAVID SANDERS, JR., by and through his Guardian and Conservator, Debra Sanders | )<br>) |
| Serve: 1643 Paradise Lane<br>Imperial, MO  63052 | )<br>) |
| Defendants. | ) |

**TRANSPORTATION INSURANCE COMPANY AND
CONTINENTAL CASUALTY COMPANY'S
<u>ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT</u>**

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

COME NOW Plaintiffs Transportation Insurance Company ("TPI") and Continental Casualty Company ("CCC") (collectively, the "Insurers") who file this, their Original Complaint for Declaratory Judgment against Defendants Caddell Construction Co. (DE), LLC ("Caddell") and David Sanders, Jr. by and through his Guardian and Conservator, Debra Sanders ("Sanders") and state as follows:

1. Insurers bring this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and 2202 for a determination of the Insurers and Caddell's rights and obligations under a

primary insurance policy issued by TPI to Weaver Steel Construction, LLC ("Weaver") and an umbrella insurance policy issued by CCC to Weaver.

2. Caddell claims additional insured status under the policies issued by TPI and CCC to Weaver with respect to an underlying lawsuit, *David Sanders, Jr. by and through his Guardian and Conservator, Debra Sanders vs. Kinder Contracting, L.L.C., Caddell Construction Co. (DE) LLC, and Robert Carbaugh*, pending in The Circuit Court of Pulaski County, Missouri, Case No.14PU-CV01402 (the "Underlying Suit").

3. The Underlying Suit alleges that Caddell and other defendants negligently and intentionally caused injury to David Sanders, Jr. ("Sanders"), an employee of Weaver who was injured while working on a construction project at Fort Leonard Wood, Missouri (the "Project"). Caddell was the general contractor on the Project and hired Weaver as a subcontractor to work on the Project.

## PARTIES

4. Plaintiff Transportation Insurance Company is a foreign insurance company organized and existing under the laws of the state of Illinois and which has its principal place of business in the state of Illinois.

5. Plaintiff Continental Casualty Company is a foreign insurance company existing under the laws of the state of Illinois and which has its principal place of business in the state of Illinois.

6. Defendant David Sanders, Jr. is an individual and resident of Franklin County, Missouri and a Plaintiff in the Underlying Suit.

7. Defendant David Sanders, Jr.'s duly appointed guardian and conservator, by virtue of Cause No. 14AB-PR00047 in the Franklin County Circuit Court, State of Missouri, is his mother, Debra Sanders.

8. Defendant Caddell Construction Co. (DE), LLC ("Caddell") is a limited liability

company formed under the laws of Delaware, and registered in Missouri as a foreign limited liability company, and whose principal address is in Montgomery, Alabama. Caddell may be served at its registered agent the CT Corporation System, 120 South Central Avenue, Clayton, Missouri.

**JURISDICTION**

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a), as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

**VENUE**

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) for the reason that a substantial part, if not all, of the events or omissions giving rise to the claim occurred in this jurisdiction. The accident which is the basis for the Underlying Suit occurred at Fort Leonard, Missouri, which is located in Pulaski County, Missouri and is within the Western District of Missouri, Southern Division.

**ACTUAL CONTROVERSY**

11. There is an actual and justiciable controversy pursuant to 28 U.S.C. §§ 2201 and 2202 between the Insurers and Caddell contends that it is an additional insured ("AI") under the insurance policies issued by Transportation and Continental to Weaver. As an AI, Caddell asserts that Transportation and Continental are required to pay for Caddell's defense of the Underlying Suit from any monetary judgment rendered against Caddell or any settlement between Caddell and Sanders in the Underlying Suit. Transportation and Continental deny that Caddell is an AI under their policies and deny that they have any duty under their policies to defend or indemnify Caddell from the Underlying Suit. Accordingly, there is an actual, present, and practical need for a declaration of whether Caddell is an AI under Transportation's and Continental's policies and whether Transportation and Continental have a duty to defend or

indemnify Caddell in the Underlying Suit.

## **CONDITIONS PRECEDENT**

12. Transportation and Continental have complied with all conditions precedent to the enforcement of their contract terms and to the seeking of declaratory relief under 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgments).

## **UNDERLYING FACTS**

13. Caddell entered into a contract with the Department of the Army, Kansas City District to furnish all labor, services, and materials and perform all work to construct Barracks at Fort Leonard Wood, Missouri ("the Project").

14. Caddell entered into a subcontract with Weaver under which Weaver was obligated to perform part of the work on the Project in the form of erection of structural steel, steel joists, steel decks, and metal stairs and railings (the "Project""). A copy of the Subcontract is attached hereto as **Exhibit "A".**

15. The Subcontract states that it was made on January 17, 2014. However, according to a date stamp on page 1 of the Subcontract, the Subcontract was not received by Weaver until January 21st. According to the date underneath the signature of Weaver's representative, Linda Weaver, on the Subcontract, Weaver signed the Subcontract on February 21, 2014.

16. Moreover, according to the date underneath the signature of Caddell's representative, Monte McKinney for Robert W. Nanney, Vice President of Caddell, Caddell signed the Subcontract on March 5, 2014. Thus, the Subcontract was not executed and effective until it was counter-signed by Caddell on Marcy 5, 2014.

17. On August 4, 2014, Sanders filed the Underlying Suit against Kinder Contracting, L.L.C. ("Kinder"), Caddell, and Robert Carbaugh ("Carbaugh"), an employee of Kinder. A copy of the Petition filed by Sanders in the Underlying Suit ("Sanders' Petition") is attached hereto as

**Exhibit "B".** Sanders has not sought any damage from Weaver.

18. Sanders' Petition alleges that on February 18, 2014, Sanders, an employee of Weaver, was working with Carbaugh and Kinder on the Project. Sanders and Carbaugh were installing a steel beam to a column at a height of approximately forty feet.

19. According to Sanders' Petition, the weather was windy the entire week, particularly on February 18th. Carbaugh allegedly pushed the beam towards Sanders without warning in extremely windy conditions. As a result, the beam allegedly slammed against Sanders' head, crushing Sanders' skull between the steel beam and a knife connection ("the Accident").

20. Sanders' Petition alleges that Carbaugh was in a hurry to erect the beams because Caddell had been pressuring employees to install more steel than was safe under the conditions. Carbaugh allegedly purposely and dangerously pushed the steel beam at Sanders while Sanders was looking away and without giving Sanders a timely warning in extremely windy conditions.

21. Sanders' Petition alleges that Caddell and the other defendants were negligent for a number of reasons, including erecting the beams when conditions were too windy, failing to keep a proper lookout, failing to warn or adequately instruct, raising the beam in the wrong position, pushing the beam at Sanders when he was not looking, negligent hiring, supervision and training of employees, negligently adopting inadequate safety policies, and failing to abide by established rules and guidelines for erecting steel beams.

22. Sanders' Petition alleges that Kinder and Caddell had extensive knowledge of the dangers of erecting steel during dangerous weather but willfully chose to ignore those dangers, despite the high probability serious injury or death would result. Thus, Kinder's and Caddell's intentional or reckless acts or omissions allegedly caused Sanders to suffer physical and/or emotional injury.

23. Sanders seeks actual damages against all of the defendants in the Underlying Suit

and punitive damages from Kinder and Caddell.

24. TPI issued primary commercial general liability policy number C 2082855807 to Weaver for the policy period March 3, 2013 to March 3, 2014. (the "TPI Primary Policy"). A copy of the TPI Primary Policy is attached hereto as **Exhibit "C".**

25. CCC issued umbrella commercial policy number 2082855838 to Weaver for the policy period of March 3, 2013 to March 3, 2014 (the "CCC Umbrella Policy"). A copy of the CCC Umbrella Policy is attached hereto as **Exhibit "D".**

26. On September 12, 2014, counsel for Caddell sent a letter to Weaver and the Insurers stating that it was a formal tender of defense, demand for indemnity, and notice of Caddell's status as an additional insured under one or more policies of insurance issued to Weaver ("the Demand Letter").

27. The Demand Letter cites language in the rider to the Subcontract, including a provision that stated that Weaver's liability policy was to be endorsed to name Caddell as an AI and to include an "Additional Insured for General Liability and Excess or Umbrella Liability" endorsement, as the basis for Caddell's assertion that it was an AI under the policies issued to Weaver. A copy of the Demand Letter is attached hereto as **Exhibit "E".**

28. On February 2, 2015, the Insurers sent a letter to Caddell, denying defense and indemnity to Caddell from the Underlying Suit on the basis that Caddell was not an AI and that some of the claims in the Underlying Suit were not covered and/or were excluded from coverage under Transportation's Policy and Continental's Policy (collectively the "Policies") ("the Denial Letter"). A copy of the Denial Letter is attached hereto as **Exhibit "F".**

## BASIS FOR A DECLARATORY JUDGMENT

### COUNT I.

### CADDELL DOES NOT QUALIFY AS AN AI UNDER TPI PRIMARY POLICY

29. The *Commercial General Liability Coverage Form* ("CGL Form") in the TPI Primary Policy states in relevant part:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
      **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

   b. This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
      **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

2. **Exclusions**
   This insurance does not apply to:
   a. **Expected Or Intended Injury**
      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
\*\*\*

**SECTION V – DEFINITIONS**

\*\*\*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

Page 7 of 16
Case 6:16-cv-03107-SRB   Document 1   Filed 03/22/16   Page 7 of 16

***

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

***

**CONTRACTOR'S SCHEDULED AND BLANKET ADDITIONAL INSURED ENDORSEMENT WITH LIMITED PRODUCTS-COMPLETED OPERATIONS COVERAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. WHO IS AN INSURED (Section II)** is amended to include as an insured any person or organization, including any person or organization shown in the schedule above, (called additional insured) whom you are required to add as an additional insured on this policy under a written contract or written agreement; but the written contract or written agreement must be:
  **1.** Currently in effect or becoming effective during the term of this policy; and
  **2.** Executed prior to the "bodily injury," "property damage," or "personal and advertising injury".
**B.** The insurance provided to the additional insured is limited as follows:
  **1.** That person or organization is an additional insured solely for liability due to your negligence specifically resulting from "your work" for the additional insured which is the subject of the written contract or written agreement. No coverage applies to liability resulting from the sole negligence of the additional insured.

30. Caddell is not a Named Insured and does not qualify as an insured under the **SECTION II-WHO IS AN INSURED** section of the TPI Primary Policy.

31. Caddell does not qualify as an insured under **SECTION II-WHO IS AN INSURED,** because it does not qualify under any category set forth in **SECTION II-WHO IS AN INSURED** in the TPI Primary Policy.

32. Caddell's representative, did not counter-sign the Subcontract until March 5, 2014, which was after the expiration of the policy period of the TPI Primary Policy period. Thus, the Subcontract was not "currently in effect or becoming effective during the term of" TPI Primary Policy, as required by the AI Endorsement. Thus, TPI has no duty to defend and/or indemnify Caddell under the Transportation Primary Policy.

33. Weaver's representative signed the Subcontract on February 21, 2014, after the Accident occurred. Caddell counter-signed the Subcontract, March 5, 2014, also after the Accident occurred. Because the Subcontract was not executed prior to Sanders' alleged bodily

injury and Caddell does not qualify as an AI under the AI Endorsement, TPI has no duty to defend and/or indemnify Caddell in the Underlying Suit.

34. Sanders' Petition sets forth no allegations that Weaver committed any negligence and there is no evidence that Weaver was negligent. Caddell does not qualify as an AI under the AI Endorsement, because Caddell's alleged liability is not due to Weaver's negligence resulting from Weaver's work. Thus, TPI has no duty to defend and/or indemnify Caddell under the TPI Primary Policy.

35. TPI is entitled to a judicial declaration that it has not duty to defend and/or indemnify Caddell.

### COUNT II.

### SANDERS' ALLEGATIONS OF WILLFUL AND INTENTIONAL CONDUCT ARE NOT COVERED UNDER THE TPI PRIMARY POLICY BECAUSE THEY ARE NOT AN "OCCURRENCE"

36. Alternatively, even if Caddell qualifies as an AI under the TPI Primary Policy, which the Insurers expressly deny, the TPI Primary Policy provides no coverage for Sanders' allegations that Caddell's willful and intentional conduct caused Sanders' bodily injury.

37. The TPI Primary Policy states that "this insurance applies to 'bodily injury'…only if…The 'bodily injury'…is caused by an 'occurrence'…" The TPI Primary Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

38. Sanders' allegations that Caddell had "extensive knowledge of the problems with the dangers of erecting steel in dangerous weather, but…consciously and willfully chose to ignore those dangers despite the high probability that serious injury or death would result to steel workers" are not allegations of an accident and thus, are not allegations of an "occurrence."

39. Thus, TPI is entitled to a declaration that TPI has no duty defend and/or to indemnify Caddell for any damages resulting from Caddell's alleged willful and intentional

conduct because such alleged conduct is not a covered "occurrence" and that and that TPI has not breach any contractual obligation to Caddell.

### COUNT III.

### SANDERS' ALLEGATIONS OF WILLFUL AND INTENTIONAL CONDUCT ARE NOT COVERED UNDER THE TPI PRIMARY POLICY BECAUSE THEY ARE EXCLUDED UNDER THE EXPECTED OR INTENDED INJURY EXCLUSION

40. Alternatively, even if Caddell qualifies as an AI under the TPI Primary Policy, which is expressly denied, and Sanders' allegations that Caddell's willful and intentional conduct caused Sanders' bodily injury are allegations of an "occurrence", which is also expressly denied, such allegations are excluded from coverage under **Exclusion 2 (a)** in the TPI Primary Policy.

41. Sanders' allegations that Caddell had "extensive knowledge of the problems with the dangers of erecting steel in dangerous weather, but…consciously and willfully chose to ignore those dangers despite the high probability that serious injury or death would result to steel workers" and that "Caddell's intentional or reckless acts or omissions caused Plaintiff to suffer physical and/or emotional injury" are allegations that Caddell expected or intended "bodily injury" to result from Caddell's actions. Thus, coverage for damages resulting from Caddell's allegedly willful and intentional conduct is excluded under **Exclusion (2) (a).**

42. Thus, TPI is entitled to a declaration that TPI has no duty to defend and/or indemnify Caddell for damages resulting from Caddell's allegedly willful and intentional conduct that caused Sanders' bodily injury because these allegations are excluded from coverage under **Exclusion 2(a),** the Expected Or Intended Injury exclusion and that and that TPI has not breached any contractual obligation to Caddell.

### COUNT IV.

### SANDERS' CLAIM FOR PUNITIVE DAMAGES IS NOT COVERED UNDER TRANSPORTATION'S POLICY

43. Additionally, Sanders' claim for punitive damages is not covered by the TPI

Primary Policy. Therefore, TPI is entitled to a declaration that Caddell is not entitled to coverage for Sanders' claim against Caddell for punitive damages and that TPI has not breached any contractual obligation to Caddell.

## COUNT V.

### CONTINENTAL HAS NO DUTY TO DEFEND OR INDEMNIFY CADDELL BECAUSE CADDELL IS NOT A NAMED INSURED OR AN AI UNDER THE CCC UMBRELLA POLICY

44. The CCC Umbrella Policy defines who is an insured as follows:

**COMMERCIAL UMBRELLA PLUS
COVERAGE PART**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured identified under **SECTION II** – **WHO IS AN INSURED** of this policy.

The word "insured" means any person or organization qualifying as such under **SECTION II** – **WHO IS AN INSURED.**

The words "we," "us" and "our" refer to the Company providing this insurance.
Other words and phrases that appear in quotation marks have special meaning. Refer to
**SECTION V** – **DEFINITIONS.**
**SECTION I – COVERAGES**

1. **Insuring Agreement**
   We will pay on behalf of the insured those sums in excess of "scheduled underlying insurance," "unscheduled underlying insurance" or the "retained limit" that the insured becomes legally obligated to pay as "ultimate net loss" because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies.

   a. This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "incident" anywhere in the world;
\*\*\*
2. **Exclusions**
   This Insurance does not apply to:
   a. **Expected or Intended Injury**
      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property. This exclusion does not apply to Employers Liability claims for "bodily injury" covered by "scheduled underlying insurance."

**SECTION II – WHO IS AN INSURED**

1. Named Insured means any individual or organization stated in the Declarations of this policy…

\*\*\*

2. Insured means the Named Insured and:

\*\*\*

   b. A person or organization for whom you are required, by virtue of a written contract entered into prior to the "bodily injury," "property damage" or "personal and advertising injury" occurring or being committed, to provide the insurance that is afforded by this policy. This insurance applies only with respect to operations by you or on your behalf or to facilities you own or use, but only to the extent of the limits of insurance required by such contract, not to exceed the limits of insurance in this policy.

   c. Any other persons or organizations included as an insured under the provisions of the "scheduled underlying insurance" shown in the Declarations of this policy and then only for the same coverage, except for limits of insurance, afforded under such "scheduled underlying insurance."

45. Caddell is not designated as a Named Insured on the CCC Umbrella Policy.

46. Under Section II (2)(b) of the CCC Umbrella Policy, an Insured under the CCC Umbrella Policy is a Named Insured and an organization for which Weaver was required by virtue of written contract entered into **prior** to the "bodily injury" or "property damage" to provide the insurance afforded by the CCC Umbrella Policy. (Emphasis added).

47. The Subcontract was not entered into prior to the Accident that allegedly resulted in Sanders' "bodily injury." Thus, Caddell does not qualify as an AI under the CCC Umbrella Policy in relation to the claims at issue in the Underlying Suit.

48. Because Caddell is not an AI under the TPI Primary Policy, CCC has no duty to defend or indemnify Caddell against the Underlying Suit, pursuant to Under Section II (2)(b). Accordingly, CCC is entitled to a declaration that Caddell is not an AI under the CCC Umbrella Policy, CCC has no duty to defend or indemnify Caddell in relation to the Underlying Suit and that CCC has not breached any contractual obligation to Caddell.

## COUNT VI.

### SANDERS' ALLEGATIONS OF WILLFUL AND INTENTIONAL CONDUCT ARE NOT COVERED UNDER THE CCC UMBRELLA POLICY BECAUSE THEY ARE NOT AN "INCIDENT"

49. Alternatively, even if Caddell qualifies as an AI under the CCC Umbrella Policy, which is expressly denied, the CCC Umbrella Policy provides no coverage for Sanders' allegations that Caddell's willful and intentional conduct caused Sanders's bodily injury.

50. Section I 1. (a) (1) of the CCC Umbrella Policy states that "this insurance applies to 'bodily injury'…only if…The 'bodily injury'…is caused by an 'incident'…"

51. Section V (9) of the CCC Umbrella Policy states that "With respect to 'bodily injury'…, 'incident' means an occurrence. An occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

52. Sanders' allegations that Caddell had "extensive knowledge of the problems with the dangers of erecting steel in dangerous weather, but…consciously and willfully chose to ignore those dangers despite the high probability that serious injury or death would result to steel workers" and that "Caddell's intentional or reckless acts or omissions caused Plaintiff [Sanders] to suffer physical and/or emotional injury" are not allegations of an accident and thus are not allegations of an occurrence or an "incident".

53. Thus, CCC is entitled to a declaration that CCC has no duty to defend and/or indemnify Caddell for any damages resulting from Caddell's alleged willful and intentional conduct because such alleged conduct is not a covered "incident" and that CCC has not breached any contractual obligation to Caddell.

## COUNT VII.

### SANDERS' ALLEGATIONS OF WILLFUL AND INTENTIONAL CONDUCT ARE NOT COVERED UNDER CCC's UMBRELLA POLICY BECAUSE THEY ARE EXCLUDED UNDER THE EXPECTED OR INTENDED INJURY EXCLUSION

54. Alternatively, even if Caddell were to qualify as an AI under the CCC Umbrella Policy, which is expressly denied, and Sanders' allegations that Caddell's willful and intentional conduct caused Sanders' bodily injury were found to be allegations of an "incident," which is

also expressly denied, such allegations are excluded from coverage under **Exclusion 2 (a)** in the CCC Umbrella Policy.

55. Sanders' allegations that Caddell had "extensive knowledge of the problems with the dangers of erecting steel in dangerous weather, but…consciously and willfully chose to ignore those dangers despite the high probability that serious injury or death would result to steel workers" and that "Caddell's intentional or reckless acts or omissions caused Plaintiff to suffer physical and/or emotional injury" are allegations that Caddell expected or intended "bodily injury" to result from Caddell's actions. Thus, coverage for Sanders's damages resulting from Caddell's alleged willful and intentional conduct are excluded from coverage under **Exclusion 2 (a)** in the CCC Umbrella Policy.

56. Therefore, CCC is entitled to a declaration that CCC has no duty to indemnify Caddell for damages resulting from Caddell's allegedly willful and intentional conduct because these allegations are excluded from coverage under **Exclusion 2 (a)** in the CCC Umbrella Policy.

### COUNT VIII.

### PUNITIVE DAMAGES ARE NOT COVERED BY CCC UMBRELLA POLICY

57. Alternatively, even if Caddell qualifies as an AI under the CCC Umbrella Policy, which is expressly denied, Sanders claim against Caddell for punitive damages is not covered by Continental's Policy. Continental's Policy only covers "sums the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'." Under Missouri law, punitive damages are not "damages because of 'bodily injury'" and thus are not covered under Continental's Policy. Therefore, Therefore, CCC is entitled to a declaration that Caddell is not entitled to coverage for Sanders' claim against Caddell for punitive damages and that CCC has not breach any contractual obligation to Caddell.

## PRAYER FOR RELIEF

**WHEREFORE,** Transportation Insurance Company and Continental Casualty Company respectfully request that they be granted the following:

1. A declaration that:

    a. TPI has no duty to defend Caddell from the Underlying Suit;

    b. TPI has no duty to indemnify Caddell from any judgment rendered against Caddell in the Underlying Suit or any settlement in the Underlying Suit;

    c. TPI has not breached any contractual obligation or duty allegedly owed to Caddell under the TPI Primary Policy;

    d. Caddell is not a named insured under the TPI Primary Policy;

    e. Caddell is not an additional insured under the TPI Primary Policy;

    f. Sanders' allegations of willful and intentional conduct by Caddell do not constitute an "occurrence" under the TPI Primary Policy;

    g. Sanders' allegations of willful and intentional conduct by Caddell and damages resulting from such alleged conduct are excluded from coverage under **Exclusion (2)(a)** of the TPI Primary Policy, the Expected Or Intended Injury Exclusion;

    h. Sanders' claim against Caddell for punitive damages is not covered under the TPI Primary Policy;

    i. CCC has no duty to defend Caddell in the Underlying Suit;

    j. CCC has no duty to indemnify Caddell from any judgment rendered against Caddell in the Underlying Suit or any settlement in the Underlying Suit;

    k. CCC has not breached any contractual obligation or duty allegedly owed

to Caddell under the TPI Primary Policy;

l. Caddell is not a named insured under the CCC Umbrella Policy;

m. Caddell is not an additional insured under the CCC Umbrella Policy;

n. Sanders's allegations of willful and intentional conduct by Caddell do not constitute an "incident" under the CCC Umbrella Policy;

o. Sanders' allegations of willful and intentional conduct by Caddell and damages resulting from such alleged conduct are excluded from coverage under **Exclusion (2)(a)** of the CCC Umbrella Policy. and

p. Sanders' claim against Caddell for punitive damages is not covered under the Continental Umbrella Policy.

2. Reasonable and necessary attorneys' fees in the prosecution of this action;

3. Costs of suit; and

4. Such other and further relief in law or in equity to which Transportation Insurance Company and Continental Casualty Company may be justly entitled to receive.

DATED this 22nd day of March, 2016.

Respectfully submitted,

BROWN & JAMES, P.C.

/s/ *David P. Bub*
David P. Bub, #44554MO
Brandon B. Copeland, #58226MO
800 Market Street, Ste. 1100
St. Louis, MO 63101
314-421-3400
314-421-3128 – FAX
dbub@bjpc.com
bcopeland@bjpc.com
*Attorneys for Plaintiffs, Transportation Insurance Company and Continental Casualty Company*